UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TOMMY E. JONES,

        Petitioner,                  Case Number: 18-10357
                                                Honorable David M. Lawson
v.

WARDEN J.A. TERRIS,

        Respondent.
_____/

**OPINION AND ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Tommy E. Jones, currently confined at the Federal Correctional Institution in Milan, Michigan, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241. Jones seeks relief from his federal criminal sentence, imposed by the United States District Court for the Northern District of Illinois. Jones has not demonstrated that his remedy under 28 U.S.C. § 2255 is inadequate or ineffective. Therefore, Jones improperly has filed this action under section 2241 and the Court will dismiss it.

I.

The United States Court of Appeals for the Seventh Circuit summarized the circumstances surrounding Jones's prosecution and convictions:

> Between February 2000 and January 2001, Tommy E. Jones conspired with others to distribute, and possessed with the intent to distribute, cocaine and cocaine base in the Rockwell Gardens public housing building located at 340 South Western Avenue (the 340 Building) in Chicago, Illinois. During that time, narcotic sales in the 340 Building were controlled by the Gangster Disciples, a street gang to which Jones belonged.
>
> Law enforcement authorities, including agents from the Department of Housing and Urban Development (HUD), conducted an investigatory operation at the Rockwell Gardens public housing complex from March 2000 through January 21, 2001. During this period of time, law enforcement agents surveilled the gang's activities

and conducted controlled buys that yielded more than 100 grams of crack cocaine.

In the early afternoon of May 2, 2000, Jones sold crack cocaine to a federal agent in a stairwell of the 340 Building. Special Agent Kenneth Popovits, from HUD, posed as a laborer from Indiana wanting to purchase crack for redistribution. Working with a confidential informant (CI), Agent Popovits entered the 340 Building after informing a gang sentry of their supposed intentions. The gang member directed them to the building lobby, where Popovits and the CI were searched and redirected to a stairwell.

When Agent Popovits and the CI got to the stairwell, they encountered and negotiated with three men. Popovits recognized two of the men: Michael Zolicoffer and the defendant. Zolicoffer he knew from prior transactions, but Jones he recognized from intelligence photos of individuals that frequented the area. Popovits told the men that he and the CI each wanted to buy ten bags of crack cocaine. (Each bag contained one rock of crack and was valued at ten dollars.) The unknown third man provided the first six bags to the CI, but turned to Jones to satisfy the remainder of the request. Jones completed the CI's order and then asked Popovits how much crack he still needed. Popovits told him ten. Jones then handed him ten small black bags of crack from a larger baggy. Popovits paid him $100 for his ten bags and he and the CI then left the 340 Building. The drugs obtained from Jones tested positive for 4.2 grams of cocaine base.

On the afternoon of the purchase, Agent Popovits prepared a report of the transaction. In it, he described Jones as FNU LNU No.17 (First-Name-Unknown Last-Name-Unknown): black male, six feet, one inch tall, weighing 175 lbs. A few days after his report, Popovits identified Jones in his operation's "intelligence file." The file contained photos of Rockwell Gardens' residents that had previously been arrested . . . Popovits then gave Jones's photograph to fellow agent Fount Hankle, who placed it in a spread of four other men. Agent Popovits again picked Jones. He was one-hundred percent certain that Jones was the second man in the stairwell during the May 2 drug purchase. This entire identification process took place outside of the CI's presence.

On September 17, 2002, Jones and several co-defendants were charged in a criminal complaint for conspiracy to distribute heroin, cocaine, and cocaine base in violation of 21 U.S.C. § 846. A grand jury returned an indictment against Jones on January 16, 2003, charging him with one count of conspiracy to distribute crack cocaine within 1000 feet of a public housing complex, 21 U.S.C. § 846, and one count of distribution of crack cocaine within 1000 feet of a public housing complex, 21 U.S.C. § 841(a)(1). A superseding indictment was returned with the same charges on August 21, 2003.

Following the initial indictment, a federal detainer was lodged against Jones on

> October 29, 2002. The detainer was served at Illinois River Correctional Center in Canton, Illinois, where Jones was serving time for a state conviction. The purpose of the notice was twofold: it advised Jones that he was wanted for trial on the federal charge, and it allowed him to demand a speedy trial. Jones executed the document on November 19, 2002, and delivered it to the warden of his holding institution. He was produced for trial on August 21, 2003.
>
> At trial, the government called four witnesses: Charles Butts, Jerry Harrington, Willie Mobley, and Michael Zolicoffer. All four men testified that Jones was a fellow member of the Gangster Disciples and that he sold crack cocaine on a daily basis at the 340 Building during the spring of 2000. Further, testimony was introduced that he was known to sell crack between late 1999 and mid-year 2000. Harrington, Mobley, and Zolicoffer also stated that all gang members participated in Nation's Work, which involved selling drugs for the collective benefit of the organization. Additionally, Butts, Harrington, and Zolicoffer testified that all gang members, including the defendant, were required to attend gang meetings and work security at the 340 Building. Butts and Zolicoffer attended these meetings with the defendant between 1999 and 2000.
>
> Aside from the drug sales, Jones occupied a position of authority within the Gangster Disciples. Harrington, Mobley, and Zolicoffer testified that Jones was a Regent, explaining that he was responsible for managing security assignments within the gang and leading meetings. Harrington also testified that he sold crack cocaine for Jones in February 2000. During the entire month, Jones supplied Harrington with 36 dime bags of crack per day. (A dime bag cost $10 and contained one rock of crack.) Harrington sold Jones's supply at night and Jones sold during the day. For each set of 36 bags that Harrington sold, he paid $300 back to Jones and kept $60 for himself.
> On February 17, 2004, the jury found Jones guilty on both counts charged in the superseding indictment . . . On January 28, 2005, Jones was sentenced to 300 months in custody.

*United States v. Jones*, 454 F.3d 642, 645-646 (7th Cir. 2006).

On direct appeal, Jones challenged the timeliness of his trial, Agent Popovits's identification procedure, the district court's jury instructions, and the findings made at his sentencing. The Seventh Circuit affirmed the convictions. *Ibid.*

Jones filed a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 in the Northen District of Illinois, raising four claims for relief. The court denied the motion. *United*

*States v. Jones*, No. 1:07-cv-06379, ECF No. 18 (N.D. Ill. Jan. 13, 2009). Jones attempted to appeal this decision, but the Seventh Circuit denied his application for a certificate of appealability. *Jones v. United States*, No. 09-1949 (7th Cir. Aug. 20, 2009).

In 2015, Jones filed an application under 28 U.S.C. § 2244(b)(3), seeking authorization to file a successive motion to vacate under section 2255. He argued that, "after he was sentenced in federal court for participating in a narcotics conspiracy, but before briefing on his appeal was complete, a state court vacated his conviction for sexually abusing a minor." *Jones v. United States*, No. 15-1119, ECF No. 2 (7th Cir. Feb. 6, 2015). Jones argued that the state decision vacating the sex-abuse conviction was new evidence of his actual innocence of being a career offender. *Ibid.* The Seventh Circuit denied the application because "Jones was not sentenced as a career offender" and because the fact upon which Jones's claim relied was not new and had been argued by Jones on direct appeal. *Ibid.*

In 2016, Jones filed another application seeking authorization to file a successive motion to vacate under section 2255. He again sought to raise a claim that the district court relied on a conviction that subsequently was vacated when determining his sentence. *Jones v. United States*, No. 16-3243, ECF No. 4 (7th Cir. Sept. 19, 2016). The Seventh Circuit denied the application. *Ibid.*

Jones then filed the present section 2241 petition, again arguing that his vacated sexual abuse conviction rendered him actually innocent of the career offender sentencing enhancement.

II.

Jones contends that he was sentenced improperly as a career offender under the United States Sentencing Guidelines. A prisoner generally may challenge his federal conviction or sentence only by means of a motion under 28 U.S.C. § 2255. *See Hill v. Masters*, 836 F.3d 591, 594 (6th Cir.

2016). A motion under section 2255 requires the petitioner to file his challenge in the district that imposed the criminal sentence on him. *See* 28 U.S.C. § 2255(a). A petition challenging the manner or execution of a sentence is appropriate under section 2241. *Hill*, 836 F.3d at 594. In this case, Jones is attacking his sentence, but is doing so under section 2241.

Jones argues that the Sixth Circuit's decision in *Hill* allows the petition to be filed under section 2241 because he alleges actual innocence. Section 2255's "savings clause" permits a petitioner to file a habeas corpus petition challenging his conviction under section 2241 rather than section 2255 only if it appears that the remedy afforded under section 2255 is inadequate or ineffective to test the legality of his detention. *Hill*, 836 F.3d at 594; *see also Charles v. Chandler*, 180 F.3d 753, 756 (6th Cir. 1999). Habeas corpus is not an "additional, alternative, or supplemental remedy" to the motion to vacate, set aside, or correct the sentence. *Id.* at 758.

Section 2255 is not inadequate or ineffective simply because the sentencing court denied relief and the petitioner seeks to relitigate a claim already decided. *See Adderly v. Zickefoose*, 459 F. App'x 73, 75 (3d Cir. 2012) (finding no basis for application of the savings clause when petitioner simply sought to relitigate the issue of a sentence enhancement); *Crosby v. Brook*, 353 F. App'x 591, 593 (2d Cir. 2009) (holding that section 2255's savings clause was not invoked where the petition was an attempt to relitigate issues previously decided by other courts); *Ceballos Torres v. United States*, 83 F. App'x 609 (5th Cir. 2003) (same). Jones's claim that the sentencing court relied on a subsequently overturned conviction was raised and denied on direct appeal. He also raised the claim in seeking authorization to file a successive section 2255 petition. He may not relitigate the claim here under section 2241 simply because he has not received the desired result.

III.

Because Jones has not shown that his remedy under 28 U.S.C. § 2255 is inadequate or ineffective, he is not entitled to habeas relief under 28 U.S.C. § 2241.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [dkt. #1] is **DISMISSED**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated: April 13, 2018

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 13, 2018.

s/Susan Pinkowski  
SUSAN PINKOWSKI